No. 23-1103

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

**JOHN O. KALU,**
**Appellant**

v.

**MR. SPAULDING, WARDEN FCI ALLENWOOD;**
**K. MIDDERNATCH, LT., FCI ALLENWOOD;**
**K. BITTENBENDER, DHO, FCI ALLENWOOD**
**Appellees**

---

**ON APPEAL FROM THE JUDGMENT ENTERED IN**
**THE UNITED STATES DISTRICT COURT FOR THE MIDDLE**
**DISTRICT OF PENNSYLVANIA ON SEPTEMBER 23, 2022,**
**AT NO. 3:19-CV-01621**

---

**BRIEF FOR APPELLEES**

---

GERARD M. KARAM
United States Attorney

AUSA NAVIN JANI
Assistant U.S. Attorney
Attorney I.D. No. CA 298118
United States Attorney's Office
Middle District of Pennsylvania
1501 N. 6th Street, Box 202
Harrisburg, PA   17102
Tel: (717) 221-4482
navin.jani@usdoj.gov

# TABLE OF CONTENTS

**PAGE**

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF THE ISSUES .............................................................. 2

STATEMENT OF RELATED CASES AND PROCEEDINGS ................. 3

STATEMENT OF THE CASE ................................................................. 4

    Kalu's allegations ............................................................................ 4

    Claims against Spaulding dismissed ........................................... 4

    Claims against Middernatch dismissed ...................................... 6

SUMMARY OF ARGUMENT ................................................................. 8

STANDARD OF REVIEW ................................................................... 10

ARGUMENT ......................................................................................... 11

    I.    The district court correctly dismissed Kalu's
            Eighth Amendment claims against Warden
            Spaulding because Kalu waived them ................................. 11

            A.    Kalu never raised claims against
                  Spaulding in connection with
                  Middernatch's alleged sexual assaults .................... 11

            B.    Kalu later withdrew all claims against
                  Spaulding ........................................................... 12

i

II.    The district court correctly dismissed Kalu's Eighth
       Amendment claims against Lt. Middernatch as not
       *Bivens*-eligible ............................................................13

       A.    The Supreme Court has significantly limited
             *Bivens* ...........................................................14

       B.    Kalu's claims fail under the *Abbasi* framework ........15

CONCLUSION ..............................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................. 5

*Belt v. Fed. Bureau of Prisons,*
   336 F. Supp. 3d 428 (D.N.J. 2018) ...................................................... 20

*Bistrian v. Levi,*
   912 F.3d 79 (3d Cir. 2018) ............................................... 16, 18, 19, 22

*Bonds v. Long,*
   No. 19-967, 2019 WL 4141592 (N.D. Ohio Aug. 30, 2019) ................. 20

*Bower v. Cannon,*
   No. 17-10905, 2018 WL 6441034 (D.N.J. Dec. 7, 2018) ...................... 20

*Carlson v. Green,*
   446 U.S. 14 (1980) ............................................................................ 6, 8

*Correctional Services Corporation v. Malesko,*
   534 U.S. 61 (2001) ............................................................................... 24

*Cortes-Quinones v. Jimenez-Nettleship,*
   842 F.2d 556 (1st Cir. 1988) .............................................................. 16

*Davis v. Samuels,*
   962 F.3d 105 (3d Cir. 2020) ............................................................... 26

*Diaz v. Hart,*
   No. 20-381, 2020 WL 7074525 (M.D. Fla. Dec. 3, 2020) .................... 19

*Dongarra v. Smith,*
   27 F.4th 174 (3d Cir. 2022) ...................................................... 17, 21, 24

*Dudley v. United States,*
No. 19-317, 2020 WL 532338 (N.D. Tex. Feb. 3, 2020) ....................... 28

*Egbert v. Boule,*
142 S. Ct. 1793 (2022) ................................................................ passim

*Farmer v. Brennan,*
511 U.S. 825 (1994) ......................................................................... 6, 16

*Freedland v. Mattingly,*
No. 20-081, 2021 WL 1017253 (M.D. Pa. Mar. 17, 2021) .............. 19, 28

*Hernandez v. Mesa,*
140 S. Ct. 735 (2020) ............................................................. 16, 17, 25

*In re Imerys Talc Am., Inc.,*
38 F.4th 361 (3d Cir. 2022) ................................................................. 11

*Longworth v. Mansukhani,*
No. 19-3199, 2021 WL 4472902 (E.D.N.C. Sept. 29, 2021) ................. 28

*Mack v. Yost,*
968 F.3d 311 (3d Cir. 2020) ......................................................... 18, 24

*Mala v. Crown Bay Marina, Inc.,*
704 F.3d 239 (3d Cir. 2013) ................................................................ 11

*Mammana v. Barben,*
856 F. App'x 411 (3d Cir. 2021) .............................................. 21, 22, 27

*Millbrook v. Spitz,*
No. 18-1962, 2019 WL 5790701 (D. Colo. Aug. 26, 2019)
rep. and rec. adopted, 2019 WL 4594275 (D. Colo. Sept. 23, 2019) . .20

*Millbrook v. United States,*
No. 11-131, 2020 U.S. Dist. LEXIS 47803 (M.D. Pa. Mar. 20, 2020)
rep. and rec. adopted, No. 11-131 (M.D. Pa. June 10, 2020)........19, 28

iv

*Newman v. Beard,*
    617 F.3d 775 (3d Cir. 2010) ................................................................. 10

*Ricks v. Shover,*
    891 F.3d 468 (3d Cir. 2018) ................................................................. 20

*Rode v. Dellarciprete,*
    845 F.2d 1195 (3d Cir. 1988) ................................................................. 5

*Shorter v. United States,*
    12 F.4th 366 (3d Cir. 2021).................................................. 17, 18, 19

*Tate v. Harmon,*
    54 F.4th 839 (4th Cir. 2022) ............................................................... 22

*Taylor v. Locket,*
    17-023, 2019 WL 764023 (M.D. Fla. Feb. 21, 2019) .......................... 20

*Ziglar v. Abbasi,*
    582 U.S. 120 (2017)................................................................... passim

## Statutes

5 U.S.C. § 301 ...........................................................................................25

18 U.S.C. § 4001 .......................................................................................23

28 U.S.C. § 1291 .........................................................................................1

28 U.S.C. § 1331 .........................................................................................1

34 U.S.C. § 30301 ......................................................................................28

42 U.S.C. § 1997 ........................................................................................26

42 U.S.C. § 15601 ......................................................................................26

## **Regulations**

28 C.F.R. § .05 ...................................................................25

28 C.F.R. § 1 ....................................................................25

28 C.F.R. § 542.10 ..............................................................24

## **Other**

U.S. Department of Justice, Federal Bureau of Prisons,
   Program Statement 1210.24 .................................................25

# JURISDICTIONAL STATEMENT

Plaintiff John Kalu appeals from the dismissal of his complaint. The district court (Wilson, J.) had subject-matter jurisdiction under 28 U.S.C. § 1331. The pertinent orders were entered on March 30, 2021, Appx33, and September 23, 2022, Appx49, and Kalu filed a notice of appeal on October 11, 2022, Appx50.[1] This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] "Appx" refers to the Joint Appendix. "Doc." refers to a docket entry in the district court. "Br." refers to Kalu's opening brief.

## STATEMENT OF THE ISSUES

I.    Whether the district court correctly dismissed Kalu's Eighth Amendment claims against Warden Spaulding on the ground that the Warden was not personally involved in any alleged constitutional violation.  *See* Doc. 23; Doc. 30; Appx1-32.

II.    Whether the district court correctly dismissed Kalu's Eighth Amendment claims against Lt. Middernatch on the ground that they are not *Bivens*-eligible.  *See* Doc. 57; Doc. 63; Appx35-48.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously, and counsel is aware of no case or proceeding that is related to this case.

# STATEMENT OF THE CASE

<u>Kalu's allegations</u>

Kalu alleges that Lt. K. Middernatch sexually assaulted him on several occasions at the Allenwood Federal Correctional Institution. Specifically, he says that Middernatch fondled his genitals during pat down searches on October 14, October 29, and December 1, 2016. Appx65-67.  He further alleges that he complained to Warden Spaulding via email a few days after the second incident, but that the Warden never took any action beyond acknowledging the email. Appx67-68.   The same day he sent the email, Kalu was transferred to the Special Housing Unit (SHU).  Appx68.  He says he ultimately spent several months there, where he was forced to sleep on a metal bunk in below-freezing temperatures with neither heat nor warm clothing.  Appx71.

<u>Claims against Spaulding dismissed</u>

In August 2019, Kalu initiated a *Bivens* action against Middernatch and Spaulding alleging that both the sexual assaults and his placement in the SHU violated his Eighth Amendment right to be

free from cruel and unusual punishment.[2]  In March 2021, the district court dismissed all claims against Spaulding.  It explained that "[t]he doctrine of *respondeat superior* does not apply to constitutional claims," so Spaulding could not be held accountable unless he had some personal involvement in the alleged violations.  Appx21 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009)).  And the court noted that Kalu had alleged no such involvement.  As to the first two assaults, Kalu admits he did not inform Spaulding until after they occurred; moreover, "[a]bsent from Kalu's pleading is any allegation that Warden Spaulding knew of or otherwise acquiesced in Lt. Middernatch's alleged sexual assault of Plaintiff prior to the email Kalu sent on November 2, 2016."  Appx22.  As to the third, Kalu had alleged only that Spaulding did not act in response to Kalu's email and "dissatisfaction with the response to a grievance does not establish the involvement of officials and administrators in the underlying constitutional deprivation."  Appx21 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

---

[2] Kalu also raised claims against Discipline Hearing Officer Lt. K. Bittenbender, but they are not before this Court.

<u>Claims against Middernatch dismissed</u>

In September 2022, the district court applied the two-part test endorsed in *Ziglar v. Abbasi*, 582 U.S. 120, 139-40 (2017), and dismissed both claims against Middernatch as beyond the purview of *Bivens*. Appx42. The court held that the sexual assault and conditions-of-confinement claims both implicate different contexts than those found in either *Carlson v. Green*, 446 U.S. 14 (1980), or *Farmer v. Brennan*, 511 U.S. 825 (1994), both of which also involved the Eighth Amendment but concerned inadequate medical treatment and inmate-on-inmate violence, respectively. Appx45-47. The district court further held that special factors counseled hesitation in permitting Kalu's claims to proceed. First, the administrative remedy process of the Bureau of Prisons (BOP) offered an alternate avenue for relief. Appx45, 47. And second, Congress had been silent as to the availability of damages for either claim in legislating. Specifically, the district court found in connection with the sexual assault claim that it was "significant that Congress, in passing the Prison Rape Elimination Act opted not to include a private right for [*sic*] action for damages for

inmates." Appx46.  As for the conditions-of-confinement claim, the court opined that "Congress's omission of a standalone damages remedy against federal jailers when it passed the Prison Litigation Reform Act post-*Carlson* suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment."  Appx47 (cleaned up) (quoting *Abbasi*, 582 U.S. at 149).

## SUMMARY OF ARGUMENT

I.    The district court was right to point out in its initial order that Kalu had not alleged the personal involvement of Warden Spaulding in any violation of Kalu's constitutional rights and so the claims against him had to be dismissed.  But Kalu was explicit in his complaint about which claims he was raising against whom, and he never implicated Spaulding in the sexual assaults, so that claim has never been a part of this litigation.  At any rate, Kalu later asked the district court to proceed only on his claims against Middernatch, so any claims against Spaulding have been waived.

II.    The Supreme Court in *Egbert* significantly raised the bar for making a *Bivens* claim, and Kalu's claims against Middernatch fall well short.  His sexual assault claim arises in a new context because *Farmer* was not a *Bivens* case and, in any event, it concerned only the failure to protect from inmate-on-inmate violence not official-on-inmate violence.  His conditions of confinement claim also arises in a new context because it has no relation to the failure to offer medical care at issue in *Carlson* other than the fact that both involve the Eighth Amendment.  The availability of the BOP's administrative remedy scheme is by itself a

special factor counseling hesitation in allowing either claim to proceed.

Beyond that, Congress did not include a private right of action for

damages in either the PLRA or PREA, and the *Egbert* Court made clear

that the judiciary must defer to Congressional inaction to avoid

violating the separation-of-powers.  Accordingly, Kalu may not proceed

under *Bivens*.

## STANDARD OF REVIEW

This Court reviews the district court's dismissals *de novo*.

*Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010).

# ARGUMENT

## I. The district court correctly dismissed Kalu's Eighth Amendment claims against Warden Spaulding because Kalu waived them.

### A. Kalu never raised claims against Spaulding in connection with Middernatch's alleged sexual assaults.

When it dismissed the claims against Spaulding, the district court focused on the assaults allegedly perpetrated by Middernatch and noted that Spaulding had no personal involvement in them.  Although this conclusion was correct, the district court overlooked the threshold fact that Kalu never implicated Spaulding in his assault claim in the first place.  On this basis, the Court should hold that any "failure to protect" claim that Kalu now attempts to raise has already been waived.  *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 372 (3d Cir. 2022) (internal punctuation omitted) ("An argument is waived where a party fails to adequately raise it with a minimum level of thoroughness in the lower court."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se litigants "must abide by the same rules that apply to all other litigants").

As he recapitulates his claims on pages 7 and 8 of his complaint, Kalu makes clear what he is alleging against whom: In Paragraph 14,

he states his Eighth Amendment claim based on "repetetive [*sic*] sexual assault" and identifies only its alleged perpetrator, Middernatch, as a defendant.  Appx71.  He similarly states his First Amendment claim based on retaliation in Paragraph 16 and identifies only its alleged perpetrator, Bittenbender, as a defendant.  *Id.*  Only when stating his Eighth Amendment claim based on the excessively cold conditions in the SHU in Paragraph 15 does he mention Spaulding as a defendant, along with Bittenbender and Middernatch.  *Id.*  This specificity undermines any attempt by Kalu to suggest that his complaint is premised on the failure of Spaulding to protect him from Middernatch's alleged assaults.

### B. Kalu later withdrew all claims against Spaulding.

Whatever the nature of his claims against Spaulding, Kalu eventually withdrew them all.  To be sure, he was provided the opportunity to amend his claim against Spaulding, Appx33, and initially took advantage of it, Doc. 46.  Indeed, his amended complaint includes factual allegations absent in his original that do connect Spaulding with the assaults, *id.* at 4, as well as a count naming Spaulding that is distinct from his conditions of confinement claim, *id.*

at 6. But Kalu then filed a motion asking the district court "to withdraw his amended complaint against defendant Warden Spaulding in this matter and proceed exclusively as to Plaintiff's sexual assault claim against defendant Lt. Middernatch." Doc. 52. The court granted this motion and struck the amended complaint, allowing the case to proceed only against Middernatch based on the allegations against him in the original complaint. Doc. 54.

Kalu thus did not raise any sexual assault claims against Spaulding in his original (and the only operative) complaint, and even if he had, he later explicitly withdrew *all* claims against Spaulding. As a result, he may not now do an about-face and conjure a failure to protect claim into his appeal.[3]

## II. The district court correctly dismissed Kalu's Eighth Amendment claims against Lt. Middernatch as not *Bivens*-eligible.

As for the only claims that are properly before this Court (i.e. those against Middernatch based on his alleged assaults and his

---

[3] Although the district court did not have occasion to rule on the *Bivens*-eligibility of the claims against Warden Spaulding, they are also precluded by *Egbert* for the same reasons that the claims against Lt. Middernatch are.

placement of Kalu in the SHU), the district court correctly concluded that Kalu may not pursue either of them under *Bivens*.

### A. The Supreme Court has significantly limited *Bivens*.

As noted by one of its justices, the Supreme Court in *Egbert* eviscerated *Bivens*, "implicit[ly]" overruling it by "leav[ing] a door ajar" and yet "devis[ing] a rule that ensures no one" will ever be able to "walk through it." *Egbert*, 142 S. Ct. at 1810 (Gorsuch, J, concurring).

To begin with, the Court noted that recognizing a *Bivens* cause of action "is an extraordinary act," *id.* at 1806 n.3 (cleaned up), that is appropriate in only "the most unusual circumstances," *id.* at 1800. Beyond that, it simplified the test for making this determination, explaining that "[a] court faces only one question: whether there is *any* rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1805 (emphasis in original) (cleaned up).  Finally, it declared that the answer to this question "in most every case" will be "Yes," meaning "no *Bivens* action may lie."  *Id.* at 1803.  Indeed, it emphasized that a court "cannot" recognize a *Bivens* remedy where there is even the "potential" that "judicial intrusion into a given field might be harmful or

inappropriate." *Id.* at 1805 (cleaned up).  This is because the "uncertainty alone" of the "consequences" of permitting any new *Bivens* claim "forecloses relief."  *Id.* at 1804.

To proceed with this litigation, Kalu must therefore show that his claim is practically unique, that it would be irrational to allow Congress to decide if it should be permitted, and that there is no risk at all of negative repercussions if this Court makes that determination instead. It is difficult to imagine what kind of claim would pass this exceedingly stringent test.  But Kalu's garden-variety allegation of mistreatment at the hands of prison officials surely does not.

### B. Kalu's claims fail under the *Abbasi* framework.

To the extent *Bivens* is potentially available to Kalu, application of the two-part *Abbasi* test confirms that it is not.

### 1. Kalu's claim of assault by a prison official implicates a new context.

#### a. *Farmer* is not a *Bivens* case.

Kalu relies exclusively on *Farmer* to argue that his assault claim against Middernatch falls under the established *Bivens* context of a "failure to protect."  Br. 32, 34.  But *Farmer* is not a "previous *Bivens* case[] decided by [the Supreme] Court," *Abbasi*, 582 U.S. at 139, so the

context of his claim is new.

The Supreme Court did not actually recognize a *Bivens* cause of action in *Farmer* but merely assumed one existed. 511 U.S. at 833 (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)) ("[A]s the lower courts have uniformly held, and as we have assumed, 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners'"). Five years ago, a panel of this Court nevertheless relied on *Farmer* to conclude that inmates have an implied cause of action for failure-to-protect claims. *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018). Subsequent decisions, however, have brought the legitimacy of that reliance into question.

In 2020, the Supreme Court omitted *Farmer* when summarizing its own *Bivens* jurisprudence. *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (internal punctuation omitted) (discussing "*Bivens*, *Davis*, and *Carlson* [as] the products of an era when the Court routinely inferred causes of action that were not explicit in the text of the provision that was allegedly violated"). It repeated this in 2022. *Egbert*, 142 S. Ct. at 1802 (describing the nature of the claims in *Bivens*, *Davis*, and *Carlson* and noting that "[s]ince th[o]se cases, the Court has not implied

16

additional causes of action under the Constitution"). That same year, a panel of this Court—in a published opinion—similarly ignored *Farmer* as an established *Bivens* context. *See Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022) ("But the [Supreme] Court has recognized these implied causes of actions for constitutional violations in only three contexts: *Bivens*; *Davis* . . . and *Carlson* . . . ."). Indeed, the *Dongarra* Court acknowledged that it was dealing with a failure-to-protect claim but still discussed only *Carlson*. *Dongarra*, 27 F.4th at 181.[4]

### b. In any event, *Farmer* concerned assaults by other inmates.

Even if *Farmer* were to be considered a true *Bivens* case, it is not relevant. As the district court noted, this case "does not concern inmate-on-inmate violence." Appx45.

The Supreme Court's "understanding of a new context is broad." *Hernandez*, 140 S. Ct. at 743 (cleaned up). Accordingly, a context is not considered established just because one of the Court's three prior *Bivens* cases involved the same constitutional amendment. *Hernandez*, 140 S.

---

[4] This Court did rely on *Farmer* on one other occasion (again, pre-*Egbert*) but only when faced with a practically indistinguishable factual scenario. *See Shorter v. United States*, 12 F.4th 366, 373 (3d Cir. 2021).

Ct. at 743.  Indeed, even cases involving "almost parallel circumstances or a similar mechanism of injury" to those three cases can be meaningfully distinct enough to foreclose relief.  *Egbert*, 142 S. Ct. at 1805, 1809; *see also Bistrian*, 912 F.3d at 94 (quoting *Abbasi*, 582 U.S. at 147) (cleaned up) ("Even if there are significant parallels to one of the Court's previous *Bivens* cases, a modest extension is still an extension.").  Rather, "[t]he proper test . . . is if the Supreme Court has not previously recognized a claim in that context." *Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020)) (cleaned up).

This Court has repeatedly and explicitly stated its narrow understanding of the context addressed in *Farmer*: the failure to protect inmates from attacks by other inmates.  *Bistrian*, 912 F.3d at 90 (emphasis added) (describing *Farmer* as a case in which "the Court assessed a 'failure to protect' claim brought under the Eighth Amendment and *Bivens* as a result of *prisoner-on-prisoner violence*"); *id.* at 91 (emphasis added) ("As in *Farmer*, Bistrian seeks a remedy against prison officials for their failure to protect him from *prisoner-on-prisoner violence*."); *Shorter*, 12 F.4th at 373 (quoting *Bistrian*, 912 F.3d at 88) ("Like Shorter, Bistrian claimed prison officials had failed 'to protect

him from a substantial risk of serious injury *at the hands of other inmates.*'").  And it is this specific context that this Court has deemed established.  *Bistrian*, 912 F.3d at 88 (emphasis added) ("The *prisoner-on-prisoner violence* is not a new context for *Bivens* claims . . . ."); *id.* at 94 (emphasis added) ("*Abbasi* changed the framework of analysis for *Bivens* claims generally, but not the existence of the particular right to *Bivens* relief for *prisoner-on-prisoner violence.*"); *Shorter*, 12 F.4th at 373 (quoting *Bistrian*, 912 F.3d at 90) (declaring that "under our case law and the Supreme Court's longstanding precedent in *Farmer*, a federal prisoner 'ha[s] a clearly established constitutional right to have prison officials protect him from *inmate violence*"").  Accordingly, Kalu's attempt to stretch *Farmer* to cover his claim of official-on-inmate violence runs counter to this Court's *Bivens* jurisprudence.[5]

---

[5] Numerous district courts, including some within this Circuit, have specifically held that sexual assault by a prison official presents a new context. *See, e.g., Freedland v. Mattingly*, No. 20-081, 2021 WL 1017253, at *9 (M.D. Pa. Mar. 17, 2021) (finding inmate's Eighth Amendment claim of sexual harassment or abuse by prison official presented new context); *Diaz v. Hart*, No. 20-381, 2020 WL 7074525, at *2 (M.D. Fla. Dec. 3, 2020) (characterizing inmate's claim of sexual assault by prison officers as "meaningfully different" from cases in which Supreme Court has extended *Bivens* remedies); *Millbrook v. United States*, No. 11-131, 2020 U.S. Dist. LEXIS 47803, at *18-19 (M.D. Pa. Mar. 20, 2020) (finding inmate's Eighth Amendment claim of sexual assault by prison official

*Ricks* is irrelevant as it is not a *Bivens* case.[6] To be sure, this Court concluded there that "sexual abuse of inmates by prison officials offends the Eighth Amendment." *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018). And if Kalu were suing a state official under Section 1983 (like the plaintiff in *Ricks*), pleading a violation would be sufficient to survive a motion to dismiss, as that statute specifically authorizes suit. But a plaintiff suing a federal official under *Bivens* must clear an additional hurdle: "First, he must show that the prison violated his [constitutional] rights. Second, he must show that *Bivens* lets him sue

---

presented new context), *rep. and rec. adopted*, No. 11-131 (MEM), ECF No. 141 (M.D. Pa. Jun. 10, 2020); *Bonds v. Long*, No. 19-967, 2019 WL 4141592, at *2 (N.D. Ohio Aug. 30, 2019) (finding Eighth Amendment sexual assault claim against correctional officer presented new context); *Millbrook v. Spitz*, No. 18-1962, 2019 WL 5790701, at *11 (D. Colo. Aug. 26, 2019) (Eighth Amendment sexual assault claim against prison official presented new context), *rep. and rec. adopted*, 2019 WL 4594275 (D. Colo. Sept. 23, 2019); *Taylor v. Locket*, No. 17-023, 2019 WL 764023, at *7-8 (M.D. Fla. Feb. 21, 2019) (finding Eighth Amendment sexual assault claim against correctional officer presented new context); *Bower v. Cannon*, No. 17-10905 (RBK), 2018 WL 6441034, at *2 (D.N.J. Dec. 7, 2018) (noting that inmate's Eighth Amendment sexual harassment claim against prison official presented new context); *Belt v. Fed. Bureau of Prisons*, 336 F. Supp. 3d 428, 440 (D.N.J. 2018) (noting that inmate's Eighth Amendment sexual assault claim against prison official presented new context). The Court should likewise find so here.

[6] Nor are any of the out-of-circuit cases Kalu cites in discussing *Ricks*.

for damages." *Dongarra*, 27 F.4th at 177; *Mammana v. Barben*, 856 F. App'x 411, 412 (3d Cir. 2021) (not precedential) ("In a prior decision, we held that, if the allegations were true, then Anthony Mammana pleaded a claim that Lieutenant Barben violated his Eighth Amendment rights . . . . Now, we consider whether Mammana can sue Barben to recover damages for that injury."). In short, when it comes to *Bivens*, "[r]ights do not always have remedies," and "[t]hough [Kalu] states an Eighth Amendment violation, he lacks a remedy." *Dongarra*, 27 F.4th at 178-79.

## 2. Kalu's conditions of confinement claim also implicates a new context.

Kalu cites both *Carlson* and *Farmer* as recognizing "a *Bivens* remedy for an Eighth Amendment claim based on unconstitutional conditions of confinement." Br. 50. Defendants have already discussed at length the distinguishable status and nature of *Farmer*. Kalu's attempt to hinge his claim on *Carlson* fares no better.

In considering if the *Abbasi* case presented a new *Bivens* context, the Supreme Court described *Carlson* as involving "a claim against prison officials for failure to treat an inmate's asthma." 137 S. Ct. at 1860. This Court has similarly characterized *Carlson* as concerning

"inadequate prison medical care." *Bistrian*, 912 F.3d at 89.  Like the plaintiff in *Mammana*, who also challenged his placement in an excessively cold room without appropriate clothing, Kalu is raising a conditions-of-confinement claim that "bear[s] little resemblance to . . . a claim against prison officials for failure to treat an inmate's asthma." 856 F. App'x at 414; *see also Tate v. Harmon*, 54 F.4th 839, 847 (4th Cir. 2022) (internal punctuation omitted) (concluding that a "conditions-of-confinement" claim is not authorized by *Carlson* but instead arises in a new context).  As a result, given the restrictions the Supreme Court has imposed for recognizing a new context, Kalu must contend with the factors counseling against extending *Bivens* to cover his claim.[7]

### 3. The BOP's administrative remedy scheme is a determinative special factor that precludes both claims.

The second part of the *Abbasi* test asks courts to consider if any special factors counsel hesitation in approving a *Bivens* remedy.  Here,

---

[7] Indeed, it appears that he would need to do so even if he were to argue greater similarity to the medical claim at issue in *Carlson* than he does. *See Egbert*, 142 S. Ct. at 1809 (internal punctuation omitted) (indicating that "a plaintiff cannot justify a *Bivens* extension based on parallel circumstances with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the analytic framework prescribed by the last four decades of intervening case law").

one such factor stands out and alone dooms Kalu's complaint: the BOP remedy program.

Where another branch of government has provided an avenue for relief, courts are prohibited from doing so. *Egbert*, 142 S. Ct. at 1804 (cleaned up) (emphasis added) ("[A] court *may not* fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure."). And the court's view of the merits or efficacy of that alternative is irrelevant. *Id.* at 1807 (cleaned up) (emphasis added) (concluding that "even if *a court* independently concludes that the Government's procedures are not as effective as an individual damages remedy," "[s]o long as *Congress or the Executive* has created a remedial process that *it finds sufficient* to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy").

Congress has directed that "[t]he control and management of Federal penal and correctional institutions[] . . . shall be vested in the Attorney General, who shall promulgate rules for the government thereof." 18 U.S.C. § 4001(b)(1). Pursuant to that authority, the BOP has established an internal administrative remedy program that

"allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a); *see also id.* § 542.11(a) (directing that various BOP officials "shall[] . . . (3) Conduct an investigation into each Request or Appeal"). Moreover, in *Egbert*, the Supreme Court noted that it had already found this scheme an acceptable alternative avenue for relief. *Egbert*, 142 S. Ct. at 1806 (citing *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 74 (2001)); *see also Mack*, 968 F.3d at 321 ("[T]he BOP's administrative remedy program offers a convincing reason for us to refrain from creating a new damages remedy against federal prison officials."); *Dongarra*, 27 F.4th at 181 (internal punctuation and citation omitted) (accepting the "alternative remed[y]" provided by BOP's "prison grievance process" as one of two "special factors counselling hesitation"). As the district court noted, some courts have even found it specifically appropriate for addressing sexual assault claims. Appx45.

Importantly, *Egbert*, like this case, concerned harm from an assault that had already occurred. 142 S. Ct. at 1801. Accordingly, the very existence of this alternative avenue for relief alone warrants

24

dismissal of Kalu's complaint in its entirety.[8]  *Id.* at 1806 (emphasis

added) (". . . Congress has provided alternative remedies for aggrieved

parties in Boule's position that *independently* foreclose a *Bivens* action

here.").

> ### 4. Congressional silence in the PREA and PLRA also militates against extending *Bivens* to cover either claim.

"[S]eparation-of-powers principles" are "central" to the special

factors "analysis." *Hernandez*, 140 S. Ct. at 743 (quoting *Abbasi*, 582

---

[8] Additional alternative remedies also exist that create a significant deterrent effect, such as internal BOP discipline and DOJ Office of Inspector General oversight.  *See Egbert*, 142 S. Ct. at 1806 (discussing executive branch investigation and intra-agency oversight of employees as special factors); *Hernandez*, 140 S. Ct. at 744 (discussing DOJ's prosecution determination).   The Attorney General is obligated to "[s]upervise and direct the administration and operation of the Department of Justice," which includes the Bureau of Prisons.   28 C.F.R. § .05(a); 28 C.F.R. § .1; *see* 5 U.S.C. § 301 (authorizing the head of an Executive department to "prescribe regulations for . . . the conduct of its employees"); *see also* U.S. Department of Justice, Federal Bureau of Prisons, Program Statement 1210.24 Internal Affairs, Office of (establishing an Office of Internal Affairs to receive and investigate allegations of staff misconduct) (available at https://www.bop.gov/policy/progstat/1210_024.pdf) (last visited May 16, 2023).

U.S. at 135). This is because recognizing a *Bivens* cause of action "places great stress on the separation of powers." *Egbert*, 142 S. Ct. at 1806 n.3.

To the extent that Congress wanted to give inmates recourse beyond the BOP's remedy scheme, it had occasion to do so for prison issues in general when it passed the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e *et seq.*, and for instances of sexual assault specifically when it passed the Prison Rape Elimination Act of 2003 (PREA), 42 U.S.C. § 15601 *et seq.* But, as the district court accurately observed, both times Congress "opted not to include a private right for [*sic*] action for damages for inmates." Appx45, 47.

Kalu takes issue with having this silence weigh against approving a *Bivens* remedy.

In the case of the PLRA, he notes that this Court has twice rejected such a view. Br. 51. But he fails to mention that the Court has also twice adopted it: One time was in a published decision. *See Davis v. Samuels*, 962 F.3d 105, 112 (3d Cir. 2020) ("[It] is evident that there are special factors militating against extending *Bivens* to reach the Appellants' claim, particularly since that claim arises in a prison setting. Those factors include, but are not necessarily limited to,

Congress's post-*Bivens* promulgation of the Prison Litigation Reform Act of 1995 ("PLRA") . . . ."). The second time was in an unpublished opinion that nevertheless represents the most recent view on the subject from a panel of this Court. *Mammana*, 856 F. App'x at 415 (emphasis in original) (holding that "congressional silence on prison litigation can still counsel hesitation in *some* contexts, especially when the prisoner mistreatment alleged is different and quite more general than that alleged in *Carlson*"). In any event, the Supreme Court made clear in *Egbert* that it is inappropriate to assume that a remedy must exist unless Congress explicitly says otherwise, explaining that "we defer to congressional inaction if the design of the government program suggests that Congress has provided what it considers adequate remedial mechanisms." 142 S. Ct. at 1808 (internal quotations omitted). That is undoubtedly the case here, as Congress passed the PLRA to provide a remedial mechanism but conspicuously omitted a private damages action.

In the case of the PREA, Kalu focuses on the reference to *Farmer* in the statute's preamble. Br. 42. But no one is disputing that "deliberate indifference to the substantial risk of sexual assault violates prisoners'

rights under the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Id.* (quoting 34 U.S.C. § 30301(13)). As discussed above, however, rights and remedies are two distinct concepts. And what Congress did not do in passing this comprehensive legislation aimed at instituting a zero-tolerance policy towards prison rape (including, as Kalu highlights, cases of staff-on-inmate sexual assault, Br. 42) is authorize (or even endorse) the ability of inmates to sue prison officials in their individual capacity for damages. *See Millbrook v. United States*, No. 3:11-CV-131, 2020 U.S. Dist. LEXIS 47803, at *23 (M.D. Pa. Mar. 18, 2020) (finding omission of damages remedy in PREA "particularly compelling, important, and indeed determinative" in special factors analysis); *Longworth v. Mansukhani*, No. 19-3199, 2021 WL 4472902, at *7 (E.D.N.C. Sept. 29, 2021) (internal punctuation omitted) (finding PREA a special factor counseling hesitation because Congress was legislating "against a backdrop of existing law disfavoring extension of *Bivens*"); *Freedland v. Mattingly*, No. 1:20-CV-00081, 2021 WL 1017253, at *9 (M.D. Pa. Mar. 17, 2021) (finding Congress's failure to include a damages remedy in PREA "significant"); *Dudley v. United States*, No. 19-317, 2020 WL 532338, at *7 (N.D. Tex. Feb. 3, 2020) (holding PREA

"counsels against judicial creation of such a remedy that the legislature has not seen fit to create").

In the end, the silence of Congress in both statutes must control.

# CONCLUSION

The Court should affirm the district court's orders.

June 2, 2023

Respectfully submitted,

GERARD M. KARAM
United States Attorney

/s/ Navin Jani
AUSA NAVIN JANI
Assistant U.S. Attorney
Attorney I.D. No. CA 298118
United States Attorney's Office
Middle District of Pennsylvania
1501 N. 6th Street, Box 202
Harrisburg, PA   17102
Tel: (717) 221-4482
navin.jani@usdoj.gov

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,266 words.

2. The text of this electronic brief is identical to the text in the paper copies.

3. A virus scan using McAfee Endpoint Security was performed on this file, and no virus was detected.

<u>/s/ Navin Jani</u>
NAVIN JANI
Assistant U.S. Attorney

# **CERTIFICATE OF SERVICE**

I certify that on **June 2, 2023**, I served two copies of the attached

Brief For Appellee to the following:


Daniel G. Randolph, Esquire
David M. Zionts, Esqurie
COVINGTON & BURLING
850 10th Street NW
One City Center
Washington, DC   20001

Samuel Weiss, Esquire
RIGHTS BEHIND BARS
416 Florida Avenue NW
Unit 26152
Washington, DC   20001


/s/ Navin Jani
AUSA NAVIN JANI
Assistant U.S. Attorney